## IN THE UNITED STATES DISTRICT COURT FOR
## THE CENTRAL DISTRICT OF ILLINOIS

```
TIM STRANGE, CARRIE STRANGE,   )
and STRANGE MOTION ROD AND     )
CUSTOM CONSTRUCTION, INC.,     )
                               )
                               )
          Plaintiffs           )
                               )
     v.                        )   Case No. 04-4017
                               )
PHIL COLLINS,                  )
                               )
          Defendant            )
```

### ORDER

Before the Court is Defendant's Motion for Summary Judgment [Doc. #25]. For the reasons that follow, Defendant's motion will be denied.

### I.
### Background

In September 2002, Defendant Phil Collins (Collins) entered into a contract with Plaintiff Strange Motion Rod and Custom Construction, Inc. and its proprietors, Tim and Carrie Strange (hereinafter Strange Motion), to have Strange Motion perform work on Collins' 1952 Buick. (Def.'s Mem. Supp. Summ. J., Doc. #26 at 1 (hereinafter Def's Mem.).) Strange Motion was in possession of the car from that time until the end of June 2003, at which point Collins reclaimed it from the shop. Id. During the time period in which the Buick was being worked on, Collins made payments to Strange Motion in several installments, totaling over $53,000. Id.

Based upon the initial work that was to be performed on the

car, Strange Motion provided an estimate of $16,192.50. (Pl.'s Resp., Doc. #30 Ex. 1 at 53, line 10-19 (Timothy Strange Dep.).) Later, further modifications to the car were agreed upon, and an estimate of an additional $33,465 was given by Strange Motion. (Id. Ex. 1 at 54, line 1-2.) Collins claims that the estimate was for a completely restored custom vehicle. (Def.'s Mot., Doc. #25 at 3.) Strange Motion claims that at each point in the contract proceedings, Collins was reminded that the above figures were only a rough estimate, and that all work was at the rate of forty dollars per hour plus the cost of parts and materials. (Pl.'s Resp., Doc. #30 Ex. 1 at 53, line 4-5.)

When Collins regained possession of his car, it was in a largely incomplete state. According to Collins' expert Don Hoelscher, "[n]ot one area or item or part of this vehicle can be considered complete." (Def.'s Mot., Doc. #25 Ex. 5 at 6.) Strange Motion has also retained possession of many parts from the customized Buick. (Def.'s Mem., Doc. #26 at 1.) Strange Motion claims that Collins owes them an additional sum for services rendered, and is holding those parts until such payment is made. (Pl.'s Resp., Doc. #30 Ex. 2 at 60 (Carrie Strange Dep.).) An appraisal of the car upon its return from Strange Motion, performed by Collins' expert, places its current value at $26,000. (Def.'s Mot., Doc. #25 Ex. 5 at 2.) Strange Motion has not retained an expert to refute claims made by Collins' expert. (Pl.'s Resp.,

Doc. #30 Ex. 2 at 96.)

Collins, dissatisfied with the work performed by Strange Motion, has filed suit in Missouri for breach of contract and fraudulent misrepresentation. (Def.'s Mot., Doc. #25 Ex. 6.) He has also lodged a complaint with the Illinois Attorney General, the United States Postal Inspection Service, and the Better Business Bureau of the State of Illinois. (Id. Ex. 7.) In addition, Collins circulated a flyer at car shows, warning others of the service he received from Strange Motion. This flyer was also mailed to auto parts stores, speed shops, and rod and custom shops. (Pl.'s Resp., Doc. #30 Ex. 5 at 2.) Within the flyer (Pl.'s Resp., Doc. #30 Ex. 1), Collins makes claims that "Strange Motion, Inc. did little or almost no work for the money [Collins] paid them", and "[m]uch of the work performed by Strange Motion, Inc. on our Buick was less than professional." (Id. Ex. 3.) Other parties have made public complaints concerning Strange Motion's business practices prior to distribution of Collins' flyers. (Id. Ex. 2 at 68.) Strange Motion claims to have suffered generalized financial distress since distribution of the flyers. (Id. Ex. 1 at 2.)

Based upon this flyer, Strange Motion has filed this suit against Collins, claiming defamation, false light invasion of privacy, commercial disparagement, and interference with prospective economic advantage. Defendant Collins has filed the present motion for summary judgment on all four counts.

## II.
## Legal Standard

Summary judgment is to be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing the court, through portions of the record, that no genuine issue as to any material fact exists and that they are entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may meet this burden by showing "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the

record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

## III.
## Analysis

**A. Defamation per se**

In order to make a successful claim of defamation without pleading specific damages, the conduct in question must fall under one of the categories of defamation per se. Bryson v. News America Publications, Inc., 672 N.E.2d 1207, 1214 (Ill. 1996). "Statements that fall within these actionable per se categories are thought to be so obviously and materially harmful to the plaintiff that injury to her reputation may be presumed." Id. Four categories of statements are considered actionable as defamation per se. "They are: (1) [W]ords that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession, or business." Id.

As Strange Motion claims, the portions of the flyer stating that "Strange Motion, Inc. did little or almost no work for the money we paid them" and "[m]uch of the work performed by Strange Motion, Inc. on [Collins's] Buick was less than professional" can be construed as falling under categories (3) and (4) of the statements actionable as defamation per se.

The primary defense to the claim of defamation per se is a showing that the statements in question are, in fact, truthful. A successful defense does not require that every detail of the statement be accurate, but only that it is "substantially true." Gist v. Macon County Sheriff's Department, 671 N.E.2d 1154, 1157 (Ill. App. 1996). "Truth is a defense to a defamation action and, to establish this defense, defendant need only show the truth of the 'gist' or 'sting' of the defamatory material." Cianci v. Pettibone Corp., 698 N.E.2d 674, 678 (Ill. App. 1998). Determination of substantial truth is normally reserved for a jury, but "where no reasonable jury could find that substantial truth had not been established, the question is one of law." Id. at 679.

Here, determination of whether the "gist" of the allegedly defamatory flyer is substantially truthful is not so unambiguous as to be considered a matter of law. The exact nature of the work performed by Strange Motion and the nature of the dealings between the parties are contested material issues of fact that are currently in dispute. Strange Motion has provided evidence that

6

although the car was not completed, substantial work was performed. Evidence that the work done to the vehicle was in line with either the original estimate given or the hourly labor figure quoted to Collins is relevant to the factual issue of whether Strange Motion did "little or almost no work," or "unprofessional work." This material issue of disputed fact precludes summary judgment as to the count of defamation per se.

**B. False Light Invasion of Privacy**

The claim of false light invasion of privacy is largely similar to the defamation claim. To be liable for false light invasion of privacy, one must "give publicity to a matter concerning another that places the other before the public in a false light...if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Lovgren v. Citizens First Nat'l Bank, 534 N.E.2d 987, 989 (Ill. 1989). Special damages need not be pleaded if the action is based upon statements that are defamatory per se. Muzicowski v. Paramount Pictures Corp., 322 F.3d 918, 927 (7th Cir. 2003) (citing Schaffer v. Zekman, 554 N.E.2d 988 (Ill. App. 1990)).

Once again, Strange Motion has provided evidence that there is a question of material fact in play as to this count. Significant factual questions remain regarding the amount of work done to the

vehicle, as well as the professionalism of that work. Evidence from Strange Motion shows that despite Collins' claims, work was performed on the car. Considering this evidence in the light most favorable to Strange Motion, the Court cannot say that Strange Motion has not been placed before the public in a false light. For this reason, Defendant's motion for summary judgment as to Count 2 is denied.

### C. Commercial Disparagement

The status of commercial disparagement as an actionable tort in Illinois is unclear. Kolengas v. Heftel Broadcasting Corp.,578 N.E.2d 299,304 (Ill. App. 1991)("The common-law tort known as publication of an injurious falsehood has not been recognized in Illinois. Nor has its subspecies, the tort of commercial disparagement." (citations omitted)). However, the recent trend of courts in this state has been to conditionally accept commercial disparagement as actionable. See Barry Harlem Corp. v. Kraff, 652 N.E.2d 1077, 1083 (Ill. App. 1995); Appraisers Coalition v. Appraisal Institute, 845 F. Supp. 592, 610 (N.D. Ill. 1994). For that reason, this Court is not willing to dismiss this claim outright.

Collins' motion for summary judgment on the claim of commercial disparagement focuses on the principle, put forth by Suhadolnik v. City of Springfield, 540 N.E.2d 895 (Ill. App. 1989), that in order to claim commercial disparagement, Strange Motion

must identify a third party with which they had an expectation of doing business. Id. at 913-14. Strange Motion's identification of that third party as "suppliers of hot rod parts and users of plaintiffs' services," (see Def.'s Mem., Doc. #26 Ex. 1 at 6); meets this requirement (see next section). Due to the fact that commercial disparagement is being conditionally accepted as an actionable tort by this Court, and the fact that Strange Motion has sufficiently identified a third party with whom they have an expectation of doing business, Collins is not entitled to judgment as a matter of law. For this reason, Defendant's motion for summary judgment as to the claim of commercial disparagement is denied.

**D. Interference with a Prospective Economic Advantage**

In order to state a cause of action for tortious interference with a prospective economic advantage, a plaintiff must show: (1) that it had a reasonable expectation of entering into a valid business relationship; (2) the defendant had knowledge of the plaintiff's expectancy; (3) the defendant purposefully interfered in a way that prevented the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulted from the defendant's interference. Fellhauer v. City of Geneva, 568 N.E.2d 870,878 (Ill. 1991); Douglas Theater Corp. v. Chicago Title & Trust Co., 681 N.E.2d 564,567 (Ill. App. 1997). Additionally, there are minimum requirements regarding the

nature of the third party with whom the plaintiff has a prospective business relationship. The court in Parkway Bank & Trust Co. v. City of Darien, 357 N.E.2d 211, 214-15 (Ill. App. 1976), required that the plaintiff show an "interference with a business relationship between the plaintiff and specific third parties or any clearly identifiable group of third parties contemplating prospective contractual arrangements with the plaintiff."

Collins' motion for summary judgment as to the interference with a prospective economic advantage is based in part on Strange Motion's failure to specify the third party with whom they have a prospective business relationship beyond "suppliers of hot rod parts and users of plaintiffs' services." (See Def.'s Mem., Doc. #26 Ex. 1 at 6.) Based on the fact that the Parkway court used the term "identifiable" instead of "identified", the court in Crinkley v. Dow Jones & Co. recognized "manufacturers of medical instrumentation or allied health care products or other products" as sufficiently specific for purposes of the third party identification requirement. Parkway, 357 N.E.2d at 214; Crinkley v. Dow Jones & Co., 385 N.E.2d 714, 721-22 (Ill. App. 1978). This Court finds the designation given by Strange Motion analogous to that found sufficient in Crinkley, and therefore finds that Strange Motion has met the third party identification requirement.

The other basis of Collins' summary judgment motion as to Count 4 is that Strange Motion has suffered no damages. The

evidence for this is based upon statements in the record that Strange Motion is still working to capacity and has not been dropped by any hot rod suppliers since the distribution of Collins' flyers.  However, Strange Motion has also given deposition testimony that money has stopped flowing into the shop since distribution of the flyers, that the Stranges have both been forced to obtain other employment, and that they have almost had to close down the business.  Based upon the nature of the flyer, it is entirely plausible that customers, upon receiving or hearing about the flyer, have slowed down or stopped payments to Strange Motion.  This could cause the claimed income shortages despite the shop technically continuing to work at its capacity.

Strange Motion points to the Restatement (Second) of Torts § 774A, as adopted in Ruben Donnelley Corp. v. Brauer. 655 N.E.2d 1162, 1172 (Ill. App. 1995).  This restatement section states that in cases of interference with a prospective contractual relation, damages can be awarded for emotional distress or harm to reputation.  Restatement (Second) of Torts § 477A (1979).  The comments to this section point out that these damages are recoverable due to the fact that these types of damages are often hard to prove with any degree of certainty, and can even be "made hypothetical by the very wrong of the defendant."  Restatement (Second) of Torts § 477A cmt. c (1979).  Strange Motion's claim is that their financial distress is the result of the harm to their

11

reputation caused by Collins' flyers.

In order to prove these damages at trial, Strange Motion will need to prove "the extent of the harm and the amount of money representing adequate compensation with as much certainty as the nature of the tort and the circumstances permit."  Restatement (Second) of Torts § 912 (1979).  Athough there may be some degree of a paper trail to show the damage to Strange Motion, but this is a case in which the nature of the tort and the circumstances do not permit a great deal of certainty.  Therefore, Strange Motion's deposition testimony as to financial distress after distribution of the flyers suffices as evidence that harm has been caused to their reputation and defeats Collins' summary judgment motion.

As neither of Defendant's contentions as to the count of interference with a prospective economic advantage holds up to the requirements of a summary judgment motion, the motion is denied as to Count 4.

IT IS THEREFORE ORDERED that Collins' Motion for Summary Judgment [Doc. #25] is DENIED.

IT IS FURTHER ORDERED that the Parties' joint proposed final pretrial order and proposed jury instructions be submitted on or before July 28, 2006.

Entered this <u>18th</u> day of July, 2006.

s/ Joe B. McDade
JOE BILLY McDADE
United States District Judge
